IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>**JARRATT ROBERTS,**</td><td>*</td><td></td></tr>
<tr><td>Plaintiff</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>**CIVIL NO. JKB-17-0157**</td></tr>
<tr><td>**AM. NEIGHBORHOOD MORT.<br>ACCEPTANCE CO.**</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Defendant</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

Plaintiff Jarratt Roberts filed this lawsuit on January 18, 2017 alleging that Defendant

American Neighborhood Mortgage Acceptance Company created a hostile work environment in

violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*, and retaliated against

Plaintiff in violation of 42 U.S.C. §1981. Defendant now brings this Partial Motion to Dismiss

Plaintiff's Title VII claims (ECF. No. 15) on the grounds that this action was filed more than 90

days after Plaintiff received a letter from the Equal Employment Opportunity Commission

informing him of his right to sue. *See* 42 U.S.C. §2000e-5(f). No hearing is necessary to resolve

the motion. *See* Local Rule 105.6. The motion will be DENIED.

## I.   *Background[1]*

Jarratt Roberts began working for American Neighborhood Mortgage Acceptance

Company ("ANMAC") in late 2012. (Pl.'s Compl. ¶ 1, ECF. No. 1.) Roughly one year into his

employment, ANMAC "required Roberts to commence working" in a new capacity. (*Id.* ¶ 31.)

---

[1] The facts are recited here as alleged by Plaintiff, as this memorandum is evaluating a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Attendant to this change in position, ANMAC required Roberts to sign a "Loan Originator Agreement," which contained an arbitration provision. (Pl.'s Opp'n to Def.'s Mot. Partial Dismissal Ex. 1 ¶9, ECF. No. 20-2.) This provision stipulated that ten days prior to the initiation of any lawsuit "the party intending to initiate such a claim" will provide the other party "specific written demand [and] a statement of the grounds upon which such demand is sought." (*Id.*) If the parties are not able resolve the issue, then the dispute "shall be resolved through binding arbitration," though the employee is allowed to file a complaint with a state agency. (*Id.*) Both parties are supposed to share the costs of arbitration, but if "an injunction is issued in favor of the Company, [the employee] will reimburse the Company for all legal fees and costs incurred relating to the injunction." (*Id.*)

After enduring more than a year of discriminatory and offensive behavior, Roberts was "laid off" in January 2014, and filed a charge on February 19, 2014 with the Equal Employment Opportunity Commission ("EEOC") alleging a hostile work environment. (Pl.'s Compl. ¶ 3, 62; Def.'s Mot. Partial Dismissal Ex. 1, ECF No. 15-1.) On September 29, 2016, the EEOC issued Roberts a notice of right to sue. (Def.'s Mot. Partial Dismissal Ex. 2, ECF. No. 15-3.) Under Title VII of the Civil Rights Act, an employee who wishes to sue his employer must bring an action within 90 days of such notification. 42 U.S.C. §2000e-5(f). On October 19, 2016, Mr. Roberts submitted a written demand for monetary relief to ANMAC in accordance with the arbitration provision in the Loan Originator Agreement. (Pl.'s Compl. ¶ 6; Pl.'s Opp'n to Def.'s Mot. Partial Dismissal Ex. 2 ¶ 9.) On November 30, 2016, more than 10 days after submitting a written request to ANMAC, and 59 days after receiving the right to sue letter, Mr. Roberts filed a demand before the American Arbitration Association ("AAA"). (Pl.'s Compl. ¶ 7.) On December 16, 2016, Mr. Roberts, through counsel, sent a copy of the demand for arbitration to

the State Department of Assessment and Taxation, which served as ANMAC's designated agent for service of process. (Pl.'s Opp'n to Def.'s Mot. Partial Dismissal Ex. 3 ¶9, ECF. No. 20-4.)

Meanwhile, AAA had been unable to contact to ANMAC. AAA sent ANMAC a letter on December 3, 2016 notifying them of Plaintiff's demand for arbitration and requesting payment of ANMAC's portion of the arbitration filing fees. (*See* Pl.'s Opp'n to Def.'s Mot. Partial Dismissal Ex. 4, ECF. No. 20-5 (referring to letter dated December 3, 2016)). On December 21, AAA sent a letter "[v]ia email" to Roberts' counsel and "[v]ia mail" to Joseph Panebianco, the President of ANMAC, stating that AAA had not received payment of ANMAC's share of the filing fee. (*Id.*) Nearly one month later, on January 17, 2017, AAA again sent notification to Roberts' counsel and ANMAC's President stating that ANMAC had yet to respond to AAA. (*Id.* (letter dated January 18, 2017); Pl.'s Opp. to Def.'s Mot. Partial Dismissal, Ex. 8, ECF. No. 20-9 (email dated January 17, 2017)). The next day, 21 days after the expiration of Roberts' 90 day filing deadline, Mr. Roberts filed his complaint in this court.

That complaint includes causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, as well as under 42 U.S.C. §1981. Defendant now brings this motion to dismiss the Title VII claims on the grounds that Plaintiff filed this action more than 90 days after receiving his right to sue letter.

## II.   *Nature of the Motion*

As a preliminary matter, this Court must decide whether compliance with the 90 day limitation under 42 U.S.C. §2000e-5(f) is necessary for the Court to retain subject matter jurisdiction, or whether the 90 day limitation is a mere condition precedent to filing, more akin to a statute of limitations. The Court faces this issue because the Defendant styled its motion as one

3

challenging the Court's subject matter jurisdiction under Rule 12(b)(1). *See* Def.'s Mot. Partial Dismissal at 1 (ECF. No. 15). The Plaintiff, however, contends that the appropriate vehicle for this defense is a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, and asks that the Court deny the Defendant's motion on the ground that it is pursued under the wrong subsection of Rule 12. For the foregoing reasons, the Court finds that the 90 day limitation is not jurisdictional in character and the Defendant's argument is more properly heard pursuant to Rule 12(b)(6). However, rather than deny the motion on the ground that the motion was presented pursuant to the wrong rule, the Court will consider the motion under Rule 12(b)(6), finding that the parties have well argued their positions in that alternative context as well.

Title VII sets out various administrative hurdles to filing a lawsuit in federal court. *See* 42 U.S.C. § 2000e-5. Among these hurdles are jurisdictional prerequisites as well as conditions precedent to filing a suit. Initial filing with the EEOC and receiving a notice of right to sue are jurisdictional prerequisites. *See Davis v. North Carolina Dep't of Correction*, 48 F.3d 134, 140 (4th Cir. 1995). The 180/300 day limitation for filing a charge with the EEOC and the 90 day limitation for filing a suit after receiving a notice of right to sue are requirements of a different character. In *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), the Supreme Court held that the requirement that a plaintiff file a complaint with the EEOC within 180/300 days of the alleged discriminatory conduct is non-jurisdictional. 455 U.S. at 398. In *Zipes*, the Court also noted that earlier cases seemed to treat the 90 day filing requirement, at issue in the present case, as a condition precedent and not as a jurisdictional prerequisite. *See* 455 U.S. at 389 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 811 n.9). In *Mohasco Corp. v. Silver*, the Court stated that the defendants had not raised the plaintiff's failure to commence their action within 90 days

4

as a defense, and thus the action was not dismissed on those grounds. 447 U.S. 811 n.9. If filing within 90 days was a jurisdictional requirement, then the defendant's failure to raise the issue would be inconsequential. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.").

The Fourth Circuit and this Court have extrapolated from *Zipes* that the 90 day limitation is non-jurisdictional by means of a syllogism. Major premise: "jurisdictional provisions are not subject to equitable tolling." *Dale v. Maryland Dep't of Transp.*, No. ELH-13-191, 2015 WL 221628, at *12 (D. Md. 2015); *see also Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000) ("[T]hese principles [of equitable tolling] may not apply to overcome a jurisdictional bar."). Minor premise: the 90 day limitation is subject to equitable tolling. *See Dale*, 2015 WL 221628 at *13 (citing cases). Conclusion: the 90 day limitation is not jurisdictional. *See Laber v. Harvey*, 438 F.3d 404, 429 n. 25 (4th Cir. 2006) (citing *Zipes*) ("If equitable tolling applies [to the 90 day limitation], which it does, the time limits are not jurisdictional, but are rather in the nature of a statute-of-limitations defense.").

Previous decisions from the Fourth Circuit and this Court have admittedly suggested the 90 day filing requirement is jurisdictional. In *Davis v. North Carolina Department of Correction*, the Fourth Circuit characterized the general question of administrative exhaustion under Title VII as "jurisdictional" but did not squarely address the specific question of whether the 90 day requirement was jurisdictional. *See* 48 F.3d at 138 ("With these restrictions on federal court *jurisdiction* over Title VII claims in mind . . . ." (emphasis added)). Earlier, in *Staton v. Newport News Cablevision*, 769 F.2d 200 (4th Cir. 1985), the Fourth Circuit had stated that failure to file a complaint within 90 days "defeats the jurisdiction of the district court." 769

5

F.2d at 201. In *McCleary-Evans v. Maryland Department of the Environment*, No. JKB-12-2928, 2013 WL 1890734 (D.Md. 2013), this Court stated that if a Title VII plaintiff misses the 90 day deadline, "then the suit must be dismissed for lack of subject-matter jurisdiction." 2013 WL 1890734 at *1. But as the Supreme Court stated in *Zipes*, "[a]lthough our cases contain scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases." 455 U.S. at 395. In *Davis*, the "restrictions on federal court jurisdiction" that the court contemplated were the requirements that a plaintiff first avail themselves of a state law claim (in a so-called "deferral system"). *Davis*, 48 F.3d at 137-38. In *Staton* and *McCleary* the immediate issue *was* whether the plaintiff had timely filed within the 90 day window after receiving a notice of right to sue, but there was no question of equitable relief in either case. In *McCleary*, the question was whether the plaintiff could avail herself of the "mailbox" rule and "rest[] upon her allegations" that she *received* her right to sue letter within the 90 day period, even if the letter was *issued* outside of the 90 day period. 2013 WL 1890734 at *1. In *Staton*, the plaintiff claimed that an "administrative error" caused them to file 111 days after receiving his right to sue letter. 769 F.2d at 200. In cases such as these, a passing reference to the jurisdictional character of this requirement should not be considered a definitive pronouncement. Furthermore, in the more recent case of *Dale v. Maryland Department of Transportation*, Judge Hollander eloquently described how cases after *Staton* have abrogated its holding that the failure to timely file "defeats the jurisdiction of the district court." 2015 WL 221628 at *11-13 (quoting *Staton*, 769 F.2d at 200).

Accordingly, the Defendant's contention that the Plaintiff failed to timely file his complaint within 90 days after receiving a right to sue letter is a non-jurisdictional objection and one properly brought under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1). Considering

6

the state of the law, however, the Court finds Defendant's styling of the motion as a Rule 12(b)(1) challenge to subject matter jurisdiction is a reasonable mistake. Instead of denying the motion on the ground that it was improperly characterized, this Court will consider the motion as one brought under Rule 12(b)(6) for failure to state a claim. *See Neal v. Residential Credit Solutions, Inc.*, No. JKB-11-3707, 2012 WL 1453597, at *1 (D. Md. 2012) (considering a 12(b)(6) motion under 12(b)(1)). Plaintiff's suggestion that this Court "lacks the discretion to convert [a Rule] 12(b)(1) motion to any other kind of motion," is without support or merit. Pl.'s Opp'n to Def.'s Mot. Partial Dismissal 5.[2]

### III. *Standard of Review*

As this Court will consider the motion under Rule 12(b)(6), the familiar standard of review for such motions applies. A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a

---

[2] "The purpose of the new Rules of Civil Procedure . . . is to expedite and simplify proceedings in the Federal Courts, and it is the aim of the various courts to so interpret them as to work substantial justice in all cases." *E.I. Du Pont De Nemours & Co. v. Dupont Textile Mills, Inc.* 26 F.Supp. 236, 236 (M.D. Pa. 1939). Thus, "[i]n accordance with the basic philosophy of the federal rules, the substance of a party's defense or objection rather than its form will control the district court's treatment of a Rule 12(b) motion or a responsive pleading." 5B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. §1347 (3d ed.). Beyond the fact that this Court does indeed have the discretion to consider this motion under Rule 12(b)(6), neither party has been prejudiced as a result of the Court's determination to consider the motion under Rule 12(b)(6) as opposed to Rule 12(b)(1). The Defendant entertained the possibility of this motion being considered under different rules, (*see* Def.'s Mot. Partial Dismissal Supp. Mem. 2 n.1, ECF. No. 15-1), and Plaintiff has had ample opportunity to respond to the substance of Defendant's contentions. Finally, in light of the ultimate ruling, *infra*, of course the Plaintiff is not prejudiced here.

7

right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## IV. *Analysis*

There is no debate that the Plaintiff failed to file this complaint within the statutorily mandated 90 days. The Plaintiff however asks that this Court apply the doctrine of equitable estoppel to prevent the Defendant from prevailing on the defense that Plaintiff failed to meet the 90 day limitation. (Pl.'s Opp'n to Def.'s Mot. Partial Dismissal 2.)

While the Plaintiff characterizes his request as one for both equitable tolling and equitable estoppel, it is more properly characterized as one for equitable estoppel. *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) (discussing the difference between equitable tolling and equitable estoppel). Equitable tolling is appropriate in instances where, despite the plaintiff's diligence "some extraordinary circumstance prevented the timely filing." *U.S. v. Oriakhi*, 394 F. App'x 976, 977 (4th Cir. 2010). Equitable tolling may be proper when the conduct of the defendant led to the plaintiff being unaware of a cause of action or otherwise unable to timely file, but it does not require misconduct by the defendant. *See Aikens v. Ingram*, 524 F. App'x 873, 879 (4th Cir. 2013). Essentially, equitable tolling concerns a situation when the plaintiff is prevented from filing timely by some circumstance beyond their control, which

8

may or may not be related to the defendant's actions or misconduct. Equitable estoppel, on the other hand, requires misconduct by the defendant. *See id.* "Misconduct" in this sense does not necessarily require a showing of deliberate, wrongful action by the defendant designed to frustrate the plaintiff's ability to file timely. Taking actions "that the employer should unmistakably have understood would cause the employee to delay filing" is sufficient to constitute "misconduct" by the defendant that justifies invocation of the equitable estoppel doctrine. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Price v. Litton Business Systems*, 694 F.2d 963, 965-66 (4th Cir. 1982)). Put simply, when a plaintiff is aware of their claim but fails to file timely because of some action or actions by the defendant, and the defendant intended such a result or was obviously aware of the likelihood of it, the defendant may be estopped from asserting that the plaintiff has missed the deadline.

The Plaintiff has made no claim that the Defendant concealed facts or "misled the plaintiff in order to conceal *the existence* of a cause of action" – actions that would support an application of equitable tolling. *English*, 828 F.2d at 1049 (emphasis added). Rather, the meat of the Plaintiff's claim is that the Defendant engaged in "intentional misconduct to cause the plaintiff to miss the filing deadline." *Id.*; (*see* Pl.'s Compl. ¶ 7; Pl.'s Opp'n to Def.'s Mot. Partial Dismissal 7-8.) In other words, there is little doubt that Plaintiff knew that he could file suit within 90 days in this Court,[3] but there is an allegation that Defendant acted in a particular way that caused Plaintiff to miss that deadline, and acted intentionally to do so. There are, then, two key questions: (1) Did the actions of the Defendant in fact cause Plaintiff to miss the 90 day deadline? If so, (2) were those actions "misconduct," i.e. either conduct intended to cause

---

[3] The right to sue letter says so clearly, the Plaintiff was at all times represented by competent counsel, and the Plaintiff had properly exhausted the administrative process under Title VII, all suggesting awareness of the requisite procedure.

Plaintiff to miss the deadline, or engaged in with unmistakable knowledge that they would cause him to miss the deadline?

While Defendant claims that it took "no action to interfere with Plaintiff's exercise of his rights in any way," it did, in fact, take two such actions, at least according to Plaintiff's allegations. (Def.'s Rep. in Supp. Mot. Partial Dismissal 5, ECF. No. 24.) Defendant drafted and signed an employment agreement that bound both itself and the Plaintiff to arbitrate their disputes. (*See* Pl.'s Opp'n to Def.'s Mot. Partial Dismissal Ex. 2 ¶ 9.) The agreement, which states that "any dispute . . . shall be resolved through binding arbitration," would seem to interfere with the Plaintiff's ability to file a claim in federal court. (*Id.*) Second, the Defendant allegedly failed to respond to requests from the AAA to contribute its share of the cost of the arbitration process nor did it timely communicate to Plaintiff its intentions regarding participation in the arbitration process. (Pl.'s Compl. ¶7.) The actions of the Defendant at issue, then, are the inclusion of a mandatory arbitration clause in the Loan Originator Agreement, and the non-responsiveness of the Defendant to AAA or the Plaintiff while the 90 days were running. Did these actions cause the Plaintiff to miss the 90 day deadline?

When a defendant represents to a plaintiff that they wish to, and will, handle a matter outside of court, that can be found to have actually caused a plaintiff to miss a statute of limitations deadline. *See Dement v. Richmond, Fredericksburg & Potomac R. Co.*, 845 F.2d 451, 461 (4th Cir. 1988); *Soberanis v. City Title Loan, LLC*, No. 2:16-4034-RMG, 2017 WL 1232437 (D. S.C. 2017). For instance, in *Dement*, a union "attempted to dissuade [the plaintiffs] from filing [a] civil action by affirmatively promising them that the . . . problem could be corrected without the necessity of them going to court." 845 F.2d at 456. After the union vice president failed to resolve the matter, the plaintiffs alerted him that they were going to file suit

10

and the vice president responded that he "did not blame [the Plaintiffs] if [they] did bring legal action, but he felt he could resolve [the matter] himself" and he "would like to keep it out of court." *Id.* The appellants refrained from filing suit based on the vice president's representation that he was handling the matter and request that they refrain from filing. *Id.* The court found that this behavior by the union vice president was a reasonable cause of the Plaintiffs' failure to file on time. *See id.* at 461-62. In *Soberanis v. City Title Loan, Inc.*, a woman filed an untimely cause of action against a debt collector under the Fair Debt Collection Practices Act. 2017 WL 1232437 at *4. The plaintiff, however, alleged that the defendant debt collector had "insisted on enforcement of [a] mandatory arbitration clause" contained in a loan agreement, but then "refused to participate" in the arbitration process. *Id.* Specifically, the plaintiff alleged that the debt collector "failed to register the arbitration clause with the AAA and refused to pay required arbitration fees." Id. at *1. This allegedly led to AAA "clos[ing] the file and refus[ing] to administer the arbitration agreement." Id. The court found these allegations, "if proven, sufficient for equitable tolling." Id. at *6.

Here, the arbitration provision in the Loan Originator Agreement is an implicit request to refrain from suit and an implicit assurance that ANMAC would be amenable to settling the matter out of court. This provision takes the place of, and is equivalent to, the explicit communications in *Dement* or *Soberanis*, where the defendants' requests that the plaintiffs refrain from suit and representations that they would "attempt to resolve the issues without need of civil suit," were grounds for equitable estoppel. *Dement*, 845 F.2d at 461.[4]

---

[4] The court in *Dement* did not use the term "equitable estoppel" but did hold that the union should not have been able to "escape from the results of its conduct by hiding behind the protection of a statute of limitations." 845 F.2d at 461.

In terms of the relationship between the Defendant and the AAA, the present case is a mirror image of *Soberanis*. In both cases the defendant, despite a clause in an agreement they drafted requiring arbitration with a specific arbitration association, failed to pay the arbitration association, and this resulted in the arbitration association refusing to proceed further. It is acknowledged that the case differs somewhat in terms of the relationship between the Defendant and the Plaintiff. In *Soberanis* the defendant actively persuaded the plaintiff to proceed through arbitration and did not merely rest on the arbitration clause. The defendant debt collector accused the plaintiff of attempting to avoid arbitration when she filed a complaint with a state agency. 2017 WL 1232437 *1. The court characterized this action as "insist[ing] on enforcement of the mandatory arbitration clause." Id. at *6. Here, there was no explicit insistence that the Plaintiff arbitrate the claims.

The Defendant makes much of this difference. It asserts that there must be "some affirmative action to interfere with the plaintiff's rights" to apply equitable estoppel, and that "silence, or inaction, is insufficient." (Def.'s Rep. in Supp. of Mot. Partial Dismissal 6-7.) Regardless of the merits of this contention, the Defendant *did* take an affirmative action – it drafted and signed an employment agreement with a mandatory arbitration clause. At any point that Plaintiff initiated a lawsuit in state or federal court, Defendant could have sought injunctive relief for breach of the employment agreement. Regardless of whether Defendant expressly insisted on arbitration in some communication to Plaintiff or his attorneys, the Loan Originator Agreement itself insists on arbitration. The agreement would even require Plaintiff to pay the legal fees and costs that arose from Defendant seeking and obtaining an injunction preventing Plaintiff from litigating the matter in court, something the Defendant admits. (*See id.* at 8 n.4.) An agreement that prevents a person from filing an action in court, allows the opposing party to

12

obtain an injunction if that person does so, and forces the person to pay for the costs of that injunction could reasonably be said to "cause" that person not to file an action in court. Thus, as alleged, the actions of the Defendant caused the Plaintiff to miss his deadline.

The second question is whether those actions constituted misconduct. While the Defendant could make an argument that the arbitration agreement was not specifically designed to prevent a party from missing a 90 day statutory filing limitation imposed by Title VII, the inclusion of a binding arbitration clause *was* designed to cause a party to that agreement, including the Plaintiff, to not file *any* claim in federal court. Furthermore, the Plaintiff alleges that Defendant's failure to respond to AAA was additional conduct that was designed to cause Plaintiff to miss his deadline. These allegations may or may not be true, but they are *plausible* and that is what matters when this is properly considered as a Rule 12(b)(6) motion. The plausible allegation is, by inference, that the defendant was trying to run out the clock. Moreover, an intentional design to cause Plaintiff to miss his deadline is not necessary in this context. Defendant was at least aware that the Plaintiff was bound to an arbitration agreement. Forcing an employee to sign an arbitration agreement that requires disputes to be settled through binding arbitration, and then not participating in arbitration, is akin to forcing an employee to sign away their right to bring a Title VII claim at all, something that, regardless of the Defendant's intention, it cannot do. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009) ("[F]ederal antidiscrimination rights may not be prospectively waived."); *E.E.O.C. v. Nucletron Corp.*, 563 F.Supp.2d 592, 597 (D. Md. 2008) (provision of severance agreement requiring employee to waive his right to bring charge with EEOC was unenforceable).

In short, Plaintiff plausibly alleges that the Defendant's action caused him to miss his 90 day deadline, and the Defendant's failure to participate in the arbitration process left the Plaintiff

13

with no other option to vindicate his rights aside from filing this action in federal court. Therefore, the Court will find equitable estoppel has been plausibly alleged and will prevent the Defendant from prevailing on the motion to dismiss by asserting the 90 day limit.

The Defendant claims, albeit in a parenthetical, that the Plaintiff has unclean hands. (Def.'s Rep. in Supp. of Mot. Partial Dismissal 6.) It claims that Plaintiff chose to direct his correspondence to "employees of the Defendant without notifying counsel," even though he knew that Defendant was represented by counsel. (*Id.* at 7.) Plaintiff likely did know that Defendant was represented – Defendant had been represented throughout the over two year EEOC investigation, a proceeding in which Plaintiff obviously participated. (*See* Def.'s Mot. to Set Aside Clerk's Order of Default Ex. 2, ECF No. 9-2. Nevertheless, Plaintiff did indeed direct his correspondence to ANMAC's President, Mr. Panebianco, and not to counsel. This circumstance, although not ideal practice, is not, however, enough to so muddy the hands of the Plaintiff as to render them "unclean." Perhaps Plaintiff simply did not assume that the same attorneys who had represented ANMAC before the EEOC continued to represent ANMAC afterward. Even if Plaintiff *did* knowingly choose to direct correspondence to President Panebianco (the "*President*" of the company, after all), the Defendant, the movant here, fails to credibly allege a lack of notice. At the end of the day, notice is what really matters here. The Plaintiff's allegation of notice is sufficient to be plausible, and the contention of unclean hands is not.

## V. *Conclusion.*

Plaintiff plausibly alleges that Defendant engaged in misconduct that caused the Plaintiff to miss his 90 day deadline and therefore this Court finds it proper to equitably estop the

14

Defendant from raising as a defense, at this motion to dismiss stage, Plaintiff's failure to file timely. The Defendant's Motion for Partial Dismissal will be DENIED by accompanying order.

DATED this 5 day of Sept. , 2017

BY THE COURT:

James K. Bredar
United States District Judge